IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-16-D

| | | |
|---|---|---|
| FAIRLEY W. NEWTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NATIONSTAR MORTGAGE LLC., | ) | |
| | ) | |
| Defendants. | ) | |

Fairley W. Newton ("Newton" or "plaintiff") is upset about a state-court foreclosure action involving himself and two of his deceased relatives, Mildred T. Newton and Odell Tinnin. See Compl. [D.E. 3-1]. On January 27, 2015, Nationstar Mortgage, LLC ("Nationstar") moved to dismiss Newton's complaint for failure to state a claim upon which relief can be granted and to cancel a lis pendens. See [D.E. 7]. On April 3, 2015, Newton responded in opposition. See [D.E. 15]. As explained below, the court grants Nationstar's motion to dismiss and cancels the lis pendens.

I.

On December 15, 2003, Mildred T. Newton and Odell Tinnin, now deceased, executed a promissory note ("note") for $124,000.00 in favor of America's Wholesale Lender. Compl. ¶¶ 5–6; Note [D.E. 3-5].[1] The note was secured by a deed of trust ("deed of trust") that Newton, Mildred

---

[1] In the foreclosure proceeding, the Bladen County Clerk of Court held that only Mildred Newton and Odell Tinnin signed the note, and the note contains only their signatures. See [D.E. 3-5]; [D.E. 5-3]. The court takes judicial notice of the public records concerning the foreclosure proceeding. See, e.g., Fed. R. Evid. 201; Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Sec'y of State for Defence v. Trimble

Newton, and Odell Tinnin executed on December 15, 2003, concerning real property located in Elizabethtown, North Carolina ("property"). See Compl. ¶¶ 5–6; Deed of Trust [D.E. 3-2]. BAC Home Loans Servicing, LP ("BAC") was the loan servicer until it transferred the loan servicing rights to Nationstar. See Compl. ¶¶ 4, 6–8.

On September 11, 2014, pursuant to N.C. Gen. Stat. § 45-21.16, the Bladen County Clerk of Court issued an order allowing foreclosure of the property. See Compl. ¶ 29; see [D.E. 5-3]. The clerk found that (i) Nationstar held a valid debt and the power to foreclose under the deed of trust, (ii) the note was in default, and (iii) Nationstar provided an acceleration warning pursuant to N.C. Gen. Stat. § 45-102 in which the interested parties were given 45 days to cure the default. See [D.E. 5-3]. The clerk also found that proper notice was given to all required parties and concluded that foreclosure was proper. Id. Each of these issues was a necessary part of the foreclosure proceeding because the clerk must find all of these elements in order to authorize foreclosure. Newton failed to appeal the clerk's order to the Bladen County Superior Court. Cf. N.C. Gen. Stat. § 45-21.16(d1). On December 4, 2014, the foreclosure sale was held. See Compl. ¶ 29; [D.E. 5-4].

On December 15, 2014, Newton filed suit in Bladen County Superior Court. See Compl. Newton also filed a notice of lis pendens. See Notice of Lis Pendens [D.E. 3-1]; N.C. Gen. Stat. § 1-116. On January 21, 2015, Nationstar removed the action to this court based on diversity jurisdiction. See [D.E. 3].

II.

In his complaint, Newton alleges: (1) a violation of the North Carolina Debt Collection Act

---

Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989).

2

("NCDCA"); (2) a violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); (3) unjust enrichment; (4) the need for a constructive trust; (5) the need for an injunction pursuant to N.C. Gen. Stat. § 45-21.34; and (6) a violation of N.C. Gen. Stat. § 45-93. See Compl. ¶¶ 39–44. Newton asks this court to set aside the foreclosure sale and to award him damages, attorney fees, and costs. See id. 9.

Newton's complaint is difficult to understand. Newton appears to allege that non-party BAC refused to deposit some unspecified checks from Newton. See Compl. ¶ 21. The exhibits to Newton's complaint appear to reflect that Newton acquired five cashier's checks from his bank at various times between August 2011 and January 2012. See Compl., Exs. 1–2. Newton also alleges that, by January 2013, he knew that Nationstar was the loan servicer, but inexplicably had his bank reissue these same checks to BAC and Bank of America Home Loans ("Bank of America") in May 2013. See Compl. ¶ 14 & Exs. 3–12. Newton does not allege what he did with the reissued checks, why he had the checks reissued to BAC and Bank of America, or why he attached them to his complaint. Nonetheless, Newton admits that he did not attempt to pay any money to Nationstar until after the foreclosure proceeding began. See Compl. ¶¶ 17, 32. Furthermore, Newton's $1,446.03 check was insufficient to bring the account current, and Newton acknowledges an arrearage of approximately $73,000. See Compl. ¶¶ 27, 32.

A Rule 12(b)(6) motion tests whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly,

3

a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79.

First, Nationstar argues that collateral estoppel bars Newton's claims. Newton's claims arise from the September 2014 foreclosure proceeding under N.C. Gen. Stat. § 45-21.16 in Bladen County Superior Court. Under the doctrine of collateral estoppel, "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986). This doctrine requires (1) a prior suit resulting in a final judgment on the merits; (2) identical issues involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined. See id. at 429, 349 S.E.2d at 557; see also Allen v. McCurry, 449 U.S. 90, 94–95 (1980); Sartin v. Macik, 535 F.3d 284, 287–88 (4th Cir. 2008); Meehan v. Cable, 127 N.C. App. 336, 339–40, 489 S.E.2d 440, 443 (1997).

In North Carolina, the Clerk of Superior Court presides over power of sale foreclosure actions. See N.C. Gen. Stat. § 45-21.16(d). A clerk's judgment "will stand as [the] judgment of the court." In re Atkinson-Clark Canal Co., 234 N.C. 374, 377, 67 S.E.2d 276, 278 (1951). Any issue that the clerk decides in a foreclosure proceeding pursuant to N.C. Gen. Stat. § 45-21.16(d) is conclusive unless appealed and reversed and cannot be relitigated in a subsequent lawsuit. See Haughton v. HSBC Bank USA, N.A., 737 S.E.2d 191, 2013 WL 432575, at *3 (N.C. Ct. App. 2013) (unpublished table decision); see also Carmichael v. Irwin Mortg. Corp., No. 5:14-CV-122-D, 2014 WL 7205099, at *4 (E.D.N.C. Dec. 17, 2014) (unpublished); Lewis v. Kesterson, No. 7:12-CV-352-BO, 2013 WL 5525663, at *1–2 (E.D.N.C. Oct. 3, 2013) (unpublished); Oketch v. JPMorgan Chase & Co., Inc., No. 3:12-CV-00102, 2012 WL 2155049, at *4 (W.D.N.C. June 13, 2012) (unpublished);

4

Jones v. HSBC Bank USA, N.A., No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (unpublished); Coleman v. Countrywide Home Loans, Inc., Civil Case No. L-10-2297, 2010 WL 5055788, at *3–4 (D. Md. Dec. 3, 2010) (unpublished); Merrill Lynch Bus. Fin. Servs., Inc. v. Cobb, No. 5:07-CV-129-D, 2008 WL 6155804, at *3 (E.D.N.C. Mar. 18, 2008) (unpublished); Douglas v. Pennamco, Inc., 75 N.C. App. 644, 646, 331 S.E.2d 298, 300 (1985); Phil Mech. Constr. Co. v. Haywood, 72 N.C. App. 318, 320–23, 325 S.E.2d 1, 1–3 (1985).

Essentially, the issues that Newton raises in his complaint are identical to those that the clerk determined on September 14, 2014. In counts one and two, Newton attempts to contest the default on the note, which is a fact specifically found in the order allowing foreclosure. See Compl. ¶¶ 39–40; cf. [D.E. 5-3]. Notably, a lender's wrongful refusal of payment is sufficient grounds for denying foreclosure order. See, e.g., In re Foreclosure of Bigelow, 185 N.C. App. 142, 147, 649 S.E.2d 10, 14 (2007). Accordingly, the order allowing foreclosure implicitly rejects Newton's wrongful-refusal theory.

In count three, Newton contests the validity of some unspecified "contract," presumably the note or deed of trust. See Compl. ¶ 41. In counts four and six, Newton contests Nationstar's right to enforce the order allowing foreclosure by requesting that the property be returned to Newton via a constructive trust or that he receive the "fair market value" of the property. Id. ¶¶ 42, 44. Collateral estoppel bars Newton from relitigating the validity of the note or deed of trust.[2] The clerk resolved those issues against him in the foreclosure proceeding.

---

[2] Moreover, to the extent any of these issues could have been raised as a defense in the underlying foreclosure proceeding, they are barred by the doctrine of res judicata. See, e.g., Goins v. Cone Mills Corp., 90 N.C. App. 90, 93, 367 S.E.2d 335, 336–37 (1988) (noting that the doctrine of res judicata bars "every ground of recovery or defense which was actually presented or which could have been presented in the previous action (emphasis added)).

5

Alternatively, Newton's claims fail on the merits. Newton alleges that "Nationstar repeatedly and willfully violated [N.C. Gen. Stat. § 75-54] by misrepresenting the amount due" and violated N.C. Gen. Stat. § 75-55 "by refusing to accept full and timely payment for the purpose of forcing [Newton] into default and foreclosing on his home." See Compl. ¶ 39. Section 75-54 states that "[n]o debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation." N.C. Gen. Stat. § 75-54. Section 75-54 then provides eight illustrative examples of conduct that constitutes such representations. See id.

To state a claim under section 75-54, a plaintiff need not cite a specific subsection of section 75-54, which provides eight nonexclusive examples of deceptive representations. See, e.g., Wilkes Nat'l Bank v. Halvorsen, 126 N.C. App. 179, 183, 484 S.E.2d 582, 584 (1997). Nor must a plaintiff allege "deliberate acts of deceit or bad faith." Forsyth Mem'l Hosp., Inc. v. Contreras, 107 N.C. App. 611, 614, 421 S.E.2d 167, 169–70 (1992). Nonetheless, a plaintiff must plausibly allege that "the act complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Id., 421 S.E.2d at 170 (quotation omitted); see, e.g., Fritz v. Duke Energy Carolinas, LLC, No. 5:13-CV-724-D, 2014 WL 3721373, at *4 (E.D.N.C. July 24, 2014) (unpublished); In re McClendon, Bankr. No. 10-04226-8-RDD, 2012 WL 5387677, at *9 (Bankr. E.D.N.C. Nov. 2, 2012) (unpublished).

Newton does not plausibly allege that Nationstar violated N.C. Gen. Stat. § 75-54. Section 75-54 concerns communications between a debt collector and a debtor. Newton's claim under the NCDCA fails because he fails to plausibly allege that he is a "consumer." Under Section 75-50, a "consumer" is "any natural person who has incurred a debt or alleged debt." N.C. Gen. Stat. § 75-50(a). A "debt" is an obligation owed or alleged to be owed by a "consumer." Id. § 75-50(b).

6

Newton did not "incur a debt" because Newton did not sign the note. See [D.E. 5-1, 5-2, 5-3]. Rather, Newton pledged his interest in the property as security for Mildred Newton and Odell Tinnin's debt. As stated in section 13 of the deed of trust, anyone "who co-signs this Security Instrument but does not execute the Note (a "co-signor"): . . . is not personally obligated to pay the sums secured by this Security Instrument . . . ." [D.E. 5-2] ¶ 13. Newton was entitled to notice of the foreclosure proceeding, which he received, but he has no standing under the NCDCA as a mere mortgagor of property. See Spurlock v. PHH Mortg. Corp., Civ. A. No. 3:10-1252, 2011 WL 2469830, at *6 (S.D. W.Va. June 17, 2011) (unpublished).

Alternatively, Newton fails to plausibly allege that Nationstar engaged in any debt collection activities vis-à-vis Newton. Simply put, Newton does not plausibly allege that Nationstar attempted to hold him liable for the debt evidenced by the note. Indeed, Newton alleges the opposite: Newton did not receive "any correspondence, by U.S. Mail or . . . any other medium . . . informing him that his mortgage loan was late, overdue, delinquent, behind, in arrears, or in default." Compl. ¶ 19. Thus, Newton fails to state a claim against Nationstar under the NCDCA.

Alternatively, to the extent Newton's claim under section 75-54(4) arises from the foreclosure action, the claim necessarily fails. Nationstar's foreclosure is final, and Newton is collaterally estopped from alleging that this result was false or wrongful in a separate action. Accordingly, Newton fails to state a claim under N.C. Gen. Stat. § 75-54(4).

Newton's complaint also cites N.C. Gen. Stat. § 75-55, which prohibits the use of "unconscionable means" to collect a debt, including communicating with a consumer known to be represented by an attorney, bringing suit against the consumer in an impractical venue, and attempting to collect fees to which the debt collector is not entitled. See N.C. Gen. Stat. § 75-55. Newton, however, fails to plausibly allege that Nationstar ever attempted to collect the debt from

7

him through any means. Cf. Compl. ¶ 19.

Next, Newton alleges "that Nationstar refused to accept full and timely payments from Plaintiff for no reason other than to foreclose on his home and sell it for [its] own profit" in violation of the UDTPA. Compl. ¶ 40. In order to state a claim under the UDTPA, a plaintiff must plausibly allege: "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." Griffith v. Glen Wood Co., 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007) (quotation omitted); see Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 87–92, 747 S.E.2d 220, 226–29 (2013); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Under the UDTPA, a defendant's conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. See, e.g., Tucker v. Boulevard at Piper Glen LLC, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002); Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

In his UDTPA claim, Newton alleges that he attempted one payment to Nationstar after the foreclosure proceeding was commenced. See Compl. ¶¶ 17, 32. The attempted payment, however, was insufficient to bring the account current and the check was returned. Id. ¶32. As a matter of law, Newton's allegations and the rest of the complaint fail to state a claim under the UDTPA upon which relief can be granted.

As for Newton's unjust enrichment claim, Newton alleges that "to the extent a valid contract did not exist" between him and Nationstar, then Newton "conferred a benefit on Nationstar without

8

receiving a commensurate benefit himself." Compl. ¶ 41. Collateral estoppel, however, bars Newton from contesting the validity of the deed of trust in this action in light of the foreclosure proceeding. In any event, Newton has failed to state a claim for unjust enrichment upon which relief can be granted. See, e.g., McCabe v. Abbott Labs., Inc., 47 F. Supp. 3d 339, 348–49 (E.D.N.C. 2014); Salley v. Bank of Am., N.A., No. 5:13-CV-753-D, 2014 WL 2768660, at *5 (E.D.N.C. June 18, 2014) (unpublished); Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988).

As for Newton's request for a "constructive trust," he alleges that "Nationstar acquired Plaintiff's home by trickery and sharp practices . . . thus becoming its constructive trustee and entitling Plaintiff to a turnover order requiring Nationstar to give back his home." Compl. ¶ 42. A "constructive trust," however, is a remedy arising by operation of law "to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Wilson v. Crab Orchard Dev. Co., 276 N.C. 198, 211–12, 171 S.E.2d 873, 882 (1970). Here, Newton has not plausibly alleged a valid claim for unjust enrichment. Indeed, Nationstar acquired title through an order allowing foreclosure pursuant to N.C. Gen. Stat. § 45.21-16. Thus, the court rejects Newton's request for a constructive trust.

As for Newton's request for "a temporary restraining order or preliminary injunction stopping the sale, followed by a permanent injunction forbidding [the] sale" pursuant to N.C. Gen. Stat. § 45-21.34, Compl. ¶ 43, section 45-21.34 provides that "[a]ny owner of real estate . . . may apply to a judge of the superior court, prior to the time that the rights of the parties to the sale or resale becoming fixed pursuant to [section 45-21.29A] to enjoin [a foreclosure] sale . . . upon any other legal or equitable ground." N.C. Gen. Stat. § 45-21.34. If no upset bid is filed, the rights of the parties to the sale become fixed ten days after the report of sale is filed. See N.C. Gen. Stat. §

9

45-21.27(a); Goad v. Chase Home Fin., LLC, 208 N.C. App. 259, 263, 704 S.E.2d 1, 4 (2010). In order to perfect a right to assert equitable defenses under section 45-21.34, "the applicant [is required] to seek and obtain the requested injunction before the point at which the upset bid period expires." Goad, 208 N.C. App. 265–66, 704 S.E.2d at 5–6. A temporary injunction may only be issued "if a plaintiff is able to show [both a] likelihood of success on the merits of his case and [that he] is likely to sustain irreparable loss unless the injunction is issued." A.E.P. Indus., Inc. v. McClure, 308 N.C. 393, 401, 302 S.E.2d 754, 759 (1983) (emphasis and quotation omitted).

On December 4, 2014, the trustee's report of sale was filed with the court. See [D.E. 5-4]. Newton did not comply with section 45-21.34, and the time to do so has expired. Thus, his request for an injunction fails. See, e.g., Cobb, 2008 WL 6155804, at *3–4; Mosler v. Druid Hills Land Co., 199 N.C. App. 293, 296, 681 S.E.2d 456, 458 (2009); Meehan, 127 N.C. App. at 338–39, 489 S.E.2d at 442–43; In re Watts, 38 N.C. App. 90, 94, 247 S.E.2d 427, 429 (1978). Newton also fails to meet the standard necessary for injunctive relief in this court. See, e.g., Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011).[3]

As for Newton's claim that Nationstar failed to respond within 25 days to his attorney's notice of appearance and correspondence in violation of N.C. Gen. Stat. § 45-93(2), section 45-93(2)

---

[3] Under certain limited circumstances, a person may ask a court to set aside a foreclosure sale for "material and prejudicial irregularity" in the sale process itself. See Swindell v. Overton, 310 N.C. 707, 713, 314 S.E.2d 512, 517 (1984). Newton, however, alleges no such irregularity with the sale. Rather, Newton's dispute relates only to Nationstar's authority to foreclose. Thus, Newton had to assert any equitable defense to foreclosure in a timely action to enjoin the foreclosure sale under section 45.21-34. See In re Helms, 55 N.C. App. 68, 72, 284 S.E.2d 553, 555 (1981). Because Newton did not make a successful challenge under section 45.21-34, Newton lost his rights to equitable relief. See, e.g., Cobb, 2008 WL 6155804, at *3–4.

10

requires the servicer to provide certain information to a "borrower" on a "home loan account" "within 25 business days of receipt of a written request from the borrower that includes or otherwise enables the servicer to identify the name and account of the borrower and includes a statement that the account is or may be in error or otherwise provides sufficient detail to the servicer regarding information sought by the borrower." N.C. Gen Stat. § 45-93(2). A borrower may bring suit for "actual damages" for a violation of this section. Id. § 45-94. Before commencing suit, a borrower must notify a servicer 30 days in advance regarding "any claimed errors or disputes" and must deliver the notice to the servicer "to the address as designated on any of the servicer's bills, statements, invoices, or other written communication." Id.

Newton fails to plausibly allege that he may pursue this claim. First, standing under section 45-93(2) is limited to a "borrower."[4] Although no North Carolina appellate court has addressed the

---

[4] N. C. Gen. Stat. § 45-93(2) states:

Provide the following information and/or documents within 25 business days of receipt of a written request from the borrower that includes or otherwise enables the servicer to identify the name and account of the borrower and includes a statement that the account is or may be in error or otherwise provides sufficient detail to the servicer regarding information sought by the borrower:

a. A copy of the original note, or if unavailable, an affidavit of lost note.

b. A statement that identifies and itemizes all fees and charges assessed under the loan transaction and provides a full payment history identifying in a clear and conspicuous manner all of the debits, credits, application of and disbursement of all payments received from or for the benefit of the borrower, and other activity on the home loan including escrow account activity and suspense account activity, if any. The period of the account history shall cover at a minimum the two-year period prior to the date of the receipt of the request for information. If the servicer has not serviced the home loan for the entire two-year time period the servicer shall provide the information going back to the date on which the servicer began servicing the home loan. For purposes of this subsection, the date of the request for the information shall be presumed to be no later than 30 days from the date of the receipt of the request. If the servicer claims that any delinquent or outstanding sums are owed on the home loan prior to the two-year

11

definition of "borrower" under section 45-93(2), numerous courts have considered this issue in the context of highly analogous claims under 12 U.S.C. § 2605 and have concluded that only individuals who execute the promissory note are "borrowers" under that statute. See, e.g., Leblow v. BAC Home Loans Servicing, LP, No. 1:12-CV-246-MR-DLH, 2013 WL 2317726, at *7 (W.D.N.C. May 28, 2013) (unpublished) (collecting cases). Given that section 45-93(2) and 12 U.S.C. § 2605 further the same purpose and have similar statutory language, the court predicts that the Supreme Court of North Carolina would limit section 45-93(2) to a borrower who signs the note. Accordingly, Newton lacks standing under section 45-93(2) as a mere co-signor of the deed of trust.

Alternatively, Newton does not plausibly allege that he provided notice in compliance with section 45-94. First, Newton did not deliver the notice of appearance and counsel's letter of May 9, 2014, to Nationstar's address for loan servicing. Rather, Newton's counsel served his notice of appearance on Trustee Services of Carolina, LLC. See [D.E. 3-1] 29–30. Moreover, Newton's counsel sent his letter of May 9, 2014, to Nationstar's registered agent for service of process. [D.E. 3-1] 31. Newton's failure to allege compliance with the notice requirements in section 45-94 entitles the defendant to dismissal. See, e.g., Orban v. Nationwide Tr. Servs., Inc., No. 5:12-CV-00016-RLV-DSC, 2014 WL 6476235, *5–6 (W.D.N.C. Nov. 19, 2014) (unpublished).

Finally, Newton fails to allege how he suffered any damages by Nationstar's alleged failure

---

        period or the period during which the servicer has serviced the loan, the servicer shall provide an account history beginning with the month that the servicer claims any outstanding sums are owed on the loan up to the date of the request for the information. The borrower is entitled to one such statement in any six-month period free of charge. Additional statements shall be provided if the borrower pays the servicer a reasonable charge for preparing and furnishing the statement not to exceed fifty dollars ($50.00).

N. C. Gen. Stat. § 45-93(2).

12

Case 7:15-cv-00016-D   Document 19   Filed 05/26/15   Page 12 of 14

to comply with section 45-93(2). See, e.g., Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 575 (E.D.N.C. 2012). Newton did not lose the "fair market value" of his home because of Nationstar's alleged non-compliance with section 45-93(2). Rather, Newton had to protect his own interest in the property in the foreclosure proceeding. See N.C. Gen. Stat. § 45.21-16(d). He also could have timely raised equitable defenses to foreclosure in a separate state-court action to enjoin the sale. See N.C. Gen. Stat. § 45-21.34. He failed to do so. Thus, his claim under section 45-93(2) fails.

On December 15, 2014, Newton filed a notice of lis pendens in which he sought to "set aside the result of the foreclosure sale." See Notice of Lis Pendens [D.E. 3-1]. "The provisions of [North Carolina law regarding lis pendens] shall apply to suits affecting the title to real property in the federal courts." N.C. Gen. Stat. § 1-120.1. "The sole object of lis pendens is to keep the subject in controversy within the power of the court until final decree and to make it possible for courts to execute their judgments. It gives notice of a claim of which otherwise a prospective purchaser would be ignorant." Mass. Bonding & Ins. Co. v. Knox, 220 N.C. 725, 727, 18 S.E.2d 436, 438 (1942).

Section 1-120.1 allows a person to use a notice of lis pendens in three situations: "(1) [a]ctions affecting title to real property[;] (2) [a]ctions to foreclose any mortgage or deed of trust or to enforce any lien on real property[; and] (3) [a]ctions in which any order of attachment is issued and real property is attached." N.C. Gen. Stat. § 1-116(a); see Zinn v. Walker, 87 N.C. App. 325, 337, 361 S.E.2d 314, 321(1987). "If the plaintiff's complaint fails to assert a claim falling within the scope of actions contemplated by North Carolina General Statute § 1-116(a), then the court may cancel the notice of lis pendens on a motion by the owner of the land without final resolution of the plaintiffs complaint." Gilley v. Shoffner, 345 F. Supp. 2d 563, 565 (M.D.N.C. 2004).

13

Newton's complaint does not state a valid claim concerning the title of the property. Accordingly, the court cancels Newton's notice of lis pendens.

III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 7] and cancels Newton's notice of lis pendens.

SO ORDERED. This **26** day of May 2015.

*[signature]*
JAMES C. DEVER III
Chief United States District Judge

14

Case 7:15-cv-00016-D   Document 19   Filed 05/26/15   Page 14 of 14